IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO.: 4:22:MJ-0023 |
| | ) | |
| | ) | |
| -vs- | ) | **MOTION TO STRIKE USA'S** |
| | ) | **MOTION FOR DETENTION AND** |
| | ) | **MOTION FOR BOND AND** |
| MAHAMAYAVI ANTLE | ) | **MEMORANDUM IN SUPPORT** |

NOW COMES the Defendant, Mahamayavi Antle, never having been convicted of any crime, having lived and worked in Myrtle Beach for almost 30 years, and having been charged with crimes to which he has pled not guilty, who moves this Court both to Strike[1] the Government's Motion for Detention and to grant him a bond. Should the Court determine that the facts warrant a detention hearing, Antle asks the Court to limit evidence and argument it receives to that which supports the Government's basis for detention in 18 U.S.C. Section 3142(f). No matter how the Court applies the Bail Reform Act to this case, who Antle is, with what he has been charged, and the Government's treatment of alleged

---

[1] See generally, c.f., *Butler v. City of Sacramento*, 2008 WL 717919, at *1, n.1 (E.D. Cal. Mar. 17, 2008) (citation and internal quotation marks omitted) ("A motion to strike is appropriate to address requested relief ... which is not recoverable as a matter of law.").

1

coconspirators mandate the setting of a bond, preferably an unsecured bond or a low secured bond with conditions the Court deems appropriate.

## FACTS

Mahamayavi "Doc" Antle, loves animals, and he has spent most of his adult life caring for animals at an approximately 50-acre preserve Antle created in Myrtle Beach, South Carolina.

> In 1983, Doc founded T.I.G.E.R.S. ("The Institute for Greatly Endangered and Rare Species") as a wildlife preservation organization dedicated to promoting global conservation education through entertaining and interactive programs. He pioneered the use of animal ambassador programs to help visitors reconnect with the natural world and to promote special connections with wildlife that could drive a global conservation message and agenda.[2]

The business Antle founded to support T.I.G.E.R.S., Myrtle Beach Safari (MBS), has become a destination for those visiting the area both from inside and from outside South Carolina. Over three million people visit the MBS and its family of businesses each year, and the businesses employ more than 20 people.

Antle is 62 years old, and he has lived in South Carolina full-time for 28 years. Although his passion for animals has required him to travel extensively, Antle's primary residence has been and will remain at MBS.

Antle has three children, three grandchildren, and a niece who all live either on MBS property or in Myrtle Beach. His mother, who suffers from dementia, has lived with him

---

[2] See Myrtle Beach Safari website, https://myrtlebeachsafari.com/meet-doc-antle/, visited on June 12, 2022.

for years in Myrtle Beach. She recently went to Arizona to visit other family members, and he is in the process of bringing her back to Myrtle Beach to care for her as her condition is worsening.

Antle would say that his children and each and every employee at MBS make valuable contributions to the welfare of the animals and the operation of the businesses. However, "Doc," as the founder and leader of MBS and T.I.G.E.R.S., is the lifeblood of the businesses and the animals. Simply put, without Antle's presence and leadership, the animals, the employees' jobs, and MBS itself are endangered.

## **THE LAW**

"[T]here is a presumption explicit in § 3142(b) that criminal defendants are to be released pending trial. This presumption is of a constitutional dimension, implicating both the right to a fair trial and the right to due process." *United States v. John Wesley Ownby, Jr.*, 1996 WL 32145, at *3 (W.D. Va. 1996) (citation omitted).

As this Court knows, "[S]ubsection (f) (of 18 U.S.C. Section 1342) strictly limits the cases in which the Government can request a detention hearing." *United States v. Lamar*, 2022 WL 1239862, at *2 (E.D. Ky. 2022). "(18 U.S.C. Section 3142) does not authorize a detention hearing whenever the government thinks detention would be desirable, but rather limits such hearings to the (circumstances listed in subsection (f))." *United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992).

Generally, under 18 U.S.C. Section 3142, the Government can request a detention hearing when (1) the type of offense with which the Government has charged the defendant

3

is of the kind specifically enumerated in 18 U.S.C. Section 3142(f)(1); (2) the defendant is charged with a felony and has a criminal history of the kind specifically enumerated in 18 U.S.C. Section 3142(f)(1); (3) "there is a serious risk that such (defendant) will flee" under 18 U.S.C. Section 3142(f)(2)(A); or (4) "a serious risk that such (defendant) will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." 18 U.S.C. Section 3142(f)(2)(B). See generally, *United States v. Ditrapano*, 2006 WL 1805848, at *1 (S.D.W. Va. June 28, 2006) (emphasis added) (stating that the Bail Reform Act "provides that the judicial officer shall hold a detention hearing upon motion of the Government in only <u>certain</u> types of cases.").

> [I]f such circumstances are not present, a detention hearing (and, thus, detention) is simply unauthorized, regardless of how the Government would fare with respect to risk of non-appearance and danger to other persons or the community.

*United States v. White*, 2021 WL 2155441, at *5 (M.D. Tenn. 2021). "It is the government's burden to establish that it is entitled to a detention hearing by a preponderance of the evidence." *United States v. Anguah*, 2019 WL 406144, at *1 (E.D.N.C. 2019) (citation omitted).

Further, should the Government properly move for detention pursuant to 18 U.S.C. Section 3142(f), the Government's basis for detention limits the scope of evidence and argument it can advance in support of detention.

> Based on the statute itself, the legislative intent behind it, and a survey of other courts' approaches, . . . the detention hearing scope in this case (should be) properly limited to evidence and argument concerning the specific (provision in 18 U.S.C. Section 3142(f) on which the Government relies to obtain a detention hearing.).

4

*United States v. Lamar*, 2022 WL 1239862, at *4 (E.D. Ky. 2022); see also, *United States v. Byrd*, 969 F.2d 106, 109–10 (5th Cir. 1992) ("A hearing can be held only if one of the . . . circumstances listed in (f)(1) and (2) is present; detention can be ordered only after a hearing is held pursuant to § 3142(f). Detention can be ordered, therefore, only 'in a case that involves' one of the . . . circumstances listed in (f). . . . The First and the Third Circuits have both interpreted the Act to limit detention to cases that involve one of the . . . circumstances listed in (f). *See Ploof,* 851 F.2d at 11; *United States v. Himler,* 797 F.2d 156, 160 (3rd Cir.1986). Both Circuits held that a person's threat to the safety of any other person or the community, in the absence of one of the . . . specified circumstances, could not justify detention under the Act. There can be no doubt that this Act clearly favors nondetention. It is not surprising that detention can be ordered only after a hearing; due process requires as much. What may be surprising is the conclusion that even after a hearing, detention can be ordered only in certain designated and limited circumstances, irrespective of whether the defendant's release may jeopardize public safety. Nevertheless, we find ourselves in agreement with the First and Third Circuits: a defendant's threat to the safety of other persons or to the community, standing alone, will not justify pre-trial detention.").

Finally, the Government bears the burden of proving detention is appropriate. See *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003) ("Under the Bail Reform Act, a defendant may be detained pending trial only if a judicial officer finds 'that no

5

condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'"); *Bah v. Barr*, 409 Fed. Supp. 3d 464, 472 (E.D. Va. 2019) (citing the Bail Reform Act for the proposition that "a criminal pre-trial bond hearing requires proof by clear and convincing evidence, 18 U.S.C. § 3142(f)(2)").

## ARGUMENT

This case does not fall within one of the circumstances for which the Bail Reform Act authorizes detention. Therefore, the Government's Motion for Detention should be stricken, and the Court should conduct a bond hearing instead of a detention hearing. Should the Court decide that a detention hearing is warranted, the Court should limit its receipt of evidence and argument only to those circumstances under 18 U.S.C. Section 3142(f) upon which the Government relies in moving for detention. Finally, the Government will be unable to prove (especially in light of its treatment of Antle's alleged coconspirators) that no conditions of bond will secure Antle's appearance or protect the public, requiring the Court to set a bond for him.

<u>Detention is not authorized in this case, and
the Government's Motion for Detention is improper.</u>

None of the circumstances that 18 U.S.C. Section 3142(f) requires as a basis for detention are present in this case: (1) the Government has not charged Antle with a crime of violence; (2) the maximum sentence for a violation of 18 U.S.C. Section 1956, money laundering, is not life imprisonment or death; (3) the Government has not charged Antle

6

with a violation of the Controlled Substance Act;[3] (4) Antle has no prior convictions, let alone prior convictions for a crime a violence, a felony that carries a penalty of life imprisonment or death, and/or any prior convictions for drug offenses of any kind; (5) money laundering is not an offense that involves a firearm, a minor victim, or a failure to register pursuant to 18 U.S.C. Section 2250; and (6) Antle is not a flight risk[4] or a risk to obstruct justice or to threaten a potential witness or juror.[5]

Because these circumstances are not present in this case, detention is not authorized, and the Government should never have moved for detention in the first place. See *White*,

---

[3] Even the Specified Unlawful Activity (SUA) upon which the Government bases its money laundering charges is not a violation of the Controlled substance Act. According to the Government, the SUA that forms the basis of the accusation against Antle is a violation of 8 U.S.C. Section 1324, "Bringing in a Harboring Certain Aliens." Docket entry 3-1, at 10.

[4] Upon information and belief, FBI Agents arrested Antle at his home at the MBS, where he has lived since 1994. Antle fully cooperated with agents as they arrived at the MBS, and voluntarily surrendered to them.

[5] Antle moved for discovery on June 7, 2022. Docket entry 21. The Government has graciously met with defense counsel for the purpose of assisting defense counsel in learning about the case. However, the only documents within the Government's possession that defense counsel has been able to review are a report that contains Antle's criminal history (which shows he has no convictions of any kind) and those which the Government has filed. The affidavit in support of the criminal complaint, docket entry 3-1, is the only document defense counsel has which describes in detail the conduct on which the Government has based its charges in this case. This affidavit is utterly void of any evidence or information that supports the notion that Antle poses any risk of leaving the District of South Carolina to avoid prosecution or would engage in any behavior designed to intimidate anyone, let alone potential witnesses or jurors. Should the Government call witnesses at the detention hearing, defense counsel will expect the Government to meet its discovery obligations pursuant to the Federal Rules of Criminal Procedure, *Brady*, *Giglio*, and its progeny.

*supra* at 3 ("[I]f such circumstances are not present, a detention hearing (and, thus, detention) is simply unauthorized, regardless of how the Government would fare with respect to risk of non-appearance and danger to other persons or the community."). Therefore, Antle requests that the Court strike the Government's Motion for Detention, and set either an unsecured bond or a low secured bond.

<u>Should the Court hold a detention hearing, it should limit the evidence and argument it receives to the requirements under 18 U.S.C. Section 3142(f) that are present in this case.</u>

None of the requirements under 18 U.S.C. Section 3142(f) are present in this case, and the Government has not made clear which it believes authorizes the Court to hold a detention hearing. Prior to the Court holding a detention hearing, Antle would ask that the Court require the Government to explain which portions of 18 U.S.C. Section 3142(f) authorize a detention hearing, and provide evidence that satisfies the Court that any of the requirements of 18 U.S.C. Section 3142(f) exist in this case.

Should the Government be able to satisfy the Court that the Bail Reform Act authorizes a detention hearing in this case, Antle would ask the Court to limit the evidence and argument it receives to those portions of 18 U.S.C. Section 3142(f) it finds apply to this case.  See *Lamar*, *supra* at 4 ("Based on the statute itself, the legislative intent behind it, and a survey of other courts' approaches, . . . the detention hearing scope in this case (should be) properly limited to evidence and argument concerning the specific (provision in 18 U.S.C. Section 3142(f) on which the Government relies to obtain a detention hearing.).").  Antle will object to any evidence and argument the Government seeks to

8

introduce at a detention hearing that do not directly relate to the portions of 18 U.S.C. Section 3142(f) the Court finds authorizes a detention hearing.

The Heart of the Matter: What Bond is appropriate for Antle?

Antle is a father, a grandfather, and business owner with no prior criminal convictions of any kind who has lived in Myrtle Beach for almost 30 years. When police wanted to serve the arrest warrant in this case, they knew exactly where to find him, MBS. Upon information a belief, they came to MBS, he let the police enter, and he completely surrendered to police. He remained at MBS even though he knew well before his arrest that federal agents had arrested a co-defendant.

At 62 years old, Antle has health challenges that make living in jail especially dangerous. He suffers from Afib.

> [A] person with Afib, faulty electrical signals make the atria contract irregularly and much faster than normal. The atria then get out of sync with the ventricles. Blood can pool in the atrium, which may lead to blood clots and strokes. Afib that causes the lower chambers to beat too quickly can cause heart failure.

Johns Hopkins Medicine, https://www.hopkinsmedicine.org/health/conditions-and-diseases/atrial-fibrillation, visited on June 13, 2022.

He also suffers from high blood pressure, which is a serious risk factor which can exacerbate the symptoms of Covid-19 should Antle contract the disease while he is incarcerated.[6] This concern is especially applicable in this case as a jail employee

---

[6] See https://www.researchgate.net/profile/Giuseppe_Lippi2/publication/340314255_Hyper

confirmed on June 13, 2022, that there are active cases of Covid-19 in the jail and required defense counsel and Antle to wear masks during their visit.

In addition, Antle suffers from the following medical adversity:

- Sleep Apnea (for which he uses a CPAP machine which he does not have in the jail);
- A torn rotator cuff;
- A torn meniscus;
- A dislocated collar bone; and
- Significant discomfort on his right side caused by multiple fractures he suffered during a car wreck years ago.

Antle's health, lack of criminal history, and his decades-long ties to the community and MBS warrant a bond. Further, the positions the Government has taken on bond and likely will take on bond in his alleged coconspirators' cases make its Motion for Detention in his case absurd.

---

tension_and_its_severity_or_mortality_in_Coronavirus_Disease_2019_COVID-19_a_pooled_analysis/links/5e837fee92851c2f5270cca2/Hypertension-and-its-severity-or-mortality-in-Coronavirus-Disease-2019-COVID-19-a-pooled-analysis.pdf (visited June 13, 2022) ("[H]ypertension is associated with (an approximate) 2.5-fold increased risk of both increased severity and mortality (associated with COVID-19). . . . [T]his effect is mainly attributed to those over the age of 60.").

Agents arrested William Dallis on June 3, 2022, in case number 4:22-mj-0022. The affidavit in support of the Complaint in Dallis' case clearly shows that Dallis engaged in more money laundering transactions with the Government informant for a longer period than it alleges Antle did. Further, the Government alleges that Dallis laundered more money than both Antle and his co-defendant, Andrew Sawyer, did combined. Compare case no. 4:22-mj-0022, docket entry 3-1, at 19, with case no. 4:22-mj-0023, docket entry 3-1, at 25. Even though Dallis' conduct was more serious than both Antle's and Sawyer's combined under its own theory, the Government <u>consented</u> to a bond for Dallis, which ultimately the Court set at $75,000 <u>unsecured</u> with conditions.

The undersigned believes the Government also will consent to a bond in Mr. Sawyer's case, although the Government to date has not indicated as much to defense counsel. Prior to conducting Antle's hearing, Antle invites the Court to inquire of the Government what if any promises it has made Sawyer related to his bond. If the Government has promised Sawyer it will consent to a bond in his case, there can be no doubt that the Government's Motion for Detention in Antle's case is ridiculous.

## **CONCLUSION**

In violation of federal law, the Government seeks to imprison 62-year old Antle as he awaits trial, beloved father and grandfather who has never been convicted of any crime and who is a 28-year resident of Myrtle Beach. Doc Antle asks that this Court strike the

11

Government's Motion for Detention and set a bond in his case just as this Court has done and likely will do, with the Government's consent and/or at the Government's urging, for his other alleged coconspirators.

Respectfully submitted,

s/ Andrew B. Moorman, Sr.
Attorney for Defendant
Moorman Law Firm, LLC
416 East North Street
2nd Floor
Greenville, South Carolina 29601
864-775-5800
andy@andymoormanlaw.com
Federal ID # 10013

Respectfully submitted,

s/ Ryan Beasley
Attorney for Defendant
Ryan Beasley, P.A.
416 East North Street
2nd Floor
Greenville, South Carolina 29601
864-679-7777
rlb@ryanbeasleylaw.com
Federal ID # 9162

Greenville, South Carolina